**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **RICHARD G. MILLER and EDWARD E. MILLER,** | ) ) ) | |
| Plaintiffs, | ) | **CIVIL ACTION** |
| v. | ) ) | **No. 09-2234-KHV** |
| **AMERICAN GENERAL LIFE INSURANCE COMPANY,** | ) ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM AND ORDER**

On April 14, 2009, Richard G. Miller and Edward E. Miller brought suit against American General Life Insurance Company ("AIG") in the District Court of Wyandotte County, Kansas alleging breach of a contract to pay life insurance benefits. See Plaintiff's First Amended Petition attached to defendant's Notice Of Removal (Doc. #1) filed May 4, 2009. On May 4, 2009, defendant removed the case to this Court. Id. This matter is before the Court on Plaintiffs' Joint Motion For Partial Summary Judgment (Doc. #29) filed April 23, 2010 and Defendant's Cross Motion For Summary Judgment (Doc. #39) filed May 28, 2010.

**Legal Standards**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P., 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which it carries the burden of proof. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. Applied Genetics, 912 F.2d at 1241.

The Court must view the record in the light most favorable to the party opposing the motion for summary judgment. Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. Anderson, 477 U.S. at 250-51. In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial. Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

**Factual Background**

The following facts are either uncontroverted or, where controverted, construed in the light most favorable to the non-moving party:

On December 11, 1997, American Franklin Life Insurance Company (the predecessor of AIG) issued a life insurance policy which insured Elizabeth J. Miller and designated her son Edward E. Miller as owner and beneficiary. On December 19, 1997, American Franklin issued an "application amendment" which listed Edward and his brother, Richard G. Miller, as owners and beneficiaries "in equal shares or all to the survivor." Edward and Richard lived with their mother at 2315 N. 99th Street, Kansas City, Kansas. The Millers each provided the same address to defendant as their address of record. From 1997 until 2007, AIG sent all correspondence and notices to the attention of Edward E. Miller as record owner of the policy at the address of record. Plaintiffs never objected to Edward being the sole addressee and if they had requested to add Richard Miller as an addressee for mailings, AIG would have done so.

> Concerning lapses in premium payments, the policy provided as follows:
>
> Grace Period: The duration of insurance coverage depends upon the Net Cash Surrender Value being sufficient to cover the monthly charges described below. If the Net Cash Surrender Value at the beginning of any policy month is less than such charges for that month, **we will send a written notice to you and any assignee on our records at the last known addresses**, stating that a grace period of 61 days has begun, starting with the beginning of that policy month. The notice will also state the amount of the premium payment sufficient to cover monthly charges for three months.
>
> If we do not receive such amount at our Administrative Office before the end of the grace period, we will then (1) withdraw the amount in your Policy Account, including any applicable surrender charge; and (2) send a written notice to you and to any assignee on our records at last known addresses, stating that this policy has ended without value.
>
> In this Policy "You" and "Your" mean the owner of the policy at the time an owner's right is exercised.

See Variable Life Insurance Policy attached as Ex. A to Plaintiffs' Joint Memorandum In Support Of Motion For Partial Summary Judgment Against Defendant American General Life Insurance Company (Doc. #30) filed April 23, 2010 [emphasis added].

Until 2007, the policy had sufficient cash value to cover the minimum premium payments. In June of 2007, the cash value of the policy was depleted and it was insufficient to cover the premium and expense payments to keep the policy in force. Under the policy, when such an event occurred, AIG was entitled to request that policyowners provide additional funds to cover the deficiency. On June 11, 2007, AIG mailed a 61-day grace period letter concerning the payment deficiency. AIG addressed the letter to Edward E. Miller, 2315 N. 99th, Kansas City, Kansas. AIG intended to notify Edward Miller that the policy required additional money within 61 days or it would terminate for nonpayment. Edward Miller denies receiving the grace period letter, and AIG did not send a notice letter to Richard Miller. Plaintiffs did not supplement the cash value before the end of the grace period.

On August 21, 2007, AIG gave Edward Miller written notice that because he had not made a premium payment, the policy had lapsed and terminated. AIG addressed the notice to Edward E. Miller. Edward and Richard Miller both admit receiving that letter. Before termination on August 21, 2007, however, Richard Miller never knew that the policy was in danger of lapsing. After receiving the termination letter, plaintiffs made a prompt application to reinstate the policy and remitted the premiums which had been due in June of 2007. In October of 2007, AIG denied reinstatement because Elizabeth Miller (then 84 years old) had undergone a change in her health condition which rendered her uninsurable. Plaintiffs wrote AIG and indicated that they had never received the grace period letter.

On October 31, 2008, Elizabeth Miller died. Had AIG not terminated the policy, plaintiffs would have been entitled to at least $342,085.50 in death benefits. Despite demands from plaintiffs, AIG has not paid any death benefits.

## Analysis

Plaintiffs seek summary judgment and argue that AIG's purported termination of the policy is void because AIG did not give written notice to Richard Miller that the policy was in danger of terminating due to lack of funds. Defendant also seeks summary judgment, arguing that it mailed the grace period letter to the proper address and that the letter was effective because notice to Edward Miller was effective notice to Richard Miller.

Under K.S.A. § 40-411, before any cancellation or forfeiture can be made, an insurer must provide notice of its intention to cancel for nonpayment of premiums. The insurance company must notify the policy owner of the deficiency in premium payment and intention to cancel the policy if the premiums are not paid within 30 days of the mailing of the notice. See K.S.A. § 40-411. An affidavit of any officer of the insurer authorized to mail the notice, which states that the notice has been duly addressed and mailed, is prima facie evidence that notice was given. Id.

Plaintiffs argue that AIG did not provide the required notice of intent to cancel because it did not address a notice to Richard Miller. Defendant argues that Edward Miller and Richard Miller were joint owners of the policy and that notice to one was effective notice to both. Defendant further argues that plaintiffs waived any right to duplicate notices because they did not advise AIG that prior notices concerning the policy should have been addressed to both of them.[1] Defendant further argues

---

[1] Defendant argues that the parties' course of performance demonstrates that plaintiffs waived any requirement that notice be addressed to both brothers. In support of this argument, defendant cites Found Props. Invs., LLC v. CTP, LLC, 286 Kan. 597, 609, 186 P.3d 766 (2008). The Court recognizes the general principle that waiver is an intentional relinquishment of a known right and that intention may be inferred from conduct. See id., 286 Kan. at 609, 186 P.3d at 774.

Here, however, as a matter of law, plaintiffs did not waive their statutory right to notice. Soon after the Kansas legislature enacted K.S.A § 40-411 (then titled Chapter 212, Laws of 1913), the Kansas Supreme Court held that any attempt to waive or circumvent its notice requirements are null
(continued...)

that even if notice to Richard Miller was ineffective, notice to Edward Miller was effective to cancel his one-half interest when Edward failed to make a payment on the delinquent policy.

Under Kansas law, joint ownership is not sufficient to create an agency relationship whereby service of notice on one joint owner is sufficient as to all. See Schwaller Lumber Co., Inc. v. Watson, 211 Kan. 141, 145, 505 P.2d 640, 644 (1973) (citing Capital Plumbing & Heating Co.v. Snyder, 2 Ill. App.3d 660, 662, 275 N.E.2d 663, 665 (Ill. App. Ct. 1971). In Schwaller, the Kansas Supreme Court held that where a notice statute, K.S.A § 60-1103(b), required a copy of a statement to be served personally upon "the owner" of property, service of the lien on a joint owner was not effective. Id. The Kansas legislature later modified K.S.A. § 60-1103 to read that a copy of the lien statement must be served upon "any one owner." See Scott v. Strickland, 10 Kan. App.2d 14, 23, 691 P.2d 45, 53 (Kan. Ct. App. 1984) (revised Section 60-1103 recognizes possibility of joint ownership and inferentially overrules holding in Schwaller that one owner is not agent for another). K.S.A. § 40-411 contains similar notice language to that found in K.S.A. § 60-1103 and states that "the insurance company shall notify the policyowner of any such policy that the premium thereon . . . is due and unpaid." Unlike Section 60-1103, the Kansas legislature has not chosen to modify K.S.A. § 40-411 to include the "any one owner" language. The Court therefore concludes that under Kansas law, service of notice on one joint owner is not sufficient as to other joint owners and it applies the notice

---

[1](...continued)
and void. See Reynolds v. Metro. Life Ins. Co., 185 P. 1051, 1052 (Kan. 1919). The Kansas Supreme Court has never reversed this holding and the Kansas legislature has never amended the statute to permit waiver of the notice rights provided therein. In light of this precedent, plaintiffs did not waive their right to notice by failing to notify defendant that they wanted Richard Miller's name added to correspondence concerning the policy. Furthermore, even if plaintiffs never complained about Richard Miller's name being omitted from prior correspondence, their silence would have no effect on the statutory notice requirements for a default letter, which is distinct from general correspondence between the parties.

requirement of K.S.A. § 40-411.[2]

While Section 40-411 does not state whether "the policyowner" implies both single and multiple policyowners, Kansas statutory interpretation provides that the singular may be construed as plural unless such construction is inconsistent with the manifest intent of the legislature or repugnant to the context of the statute. K.S.A. § 77-201.[3] Part of the purpose of K.S.A. § 40-411 is to protect policyholders who might overlook premium payments. Miner v. Standard Life & Accident Ins. Co., 451 F.2d 1273, 1275-76 (10th Cir. 1971). Courts should not interpret such statutes to create a trap for either the insurance company or the insured. Nederland Life Ins. Co. v. Meinert, 199 U.S. 171 (1905). While the Kansas legislature has not specifically addressed whether notice to "the policyowner" under § 40-411 must include all policy owners, Kansas courts have tasked insurance companies with "rather strict" compliance with the statute. Logan v. Victory Life Ins. Co., 175 Kan. 88, 94 (1953).

**Notice To Richard Miller**

Here, defendant knew of both owners and had their personal information and addresses on file. Plaintiffs executed the policy amendment and then submitted it to defendant. The record contains no evidence that plaintiffs circumvented defendant's amendment policy or trapped defendant

---

[2] Defendant cites two non-Kansas cases for the propositions that (1) notice to one joint tenant is binding upon all joint tenants and (2) due process is satisfied by mailing a single notice to joint account holders because that notice is "reasonably calculated" to give actual notice to both. See Citicorp Mortg., Inc. v. Porto, 41 Conn. App. 598, 603, 677 A.2d 10, 13 (Conn. App. Ct. 1996); In re Adler, Coleman Clearing Corp., 204 B.R. 99, 106 (Bankr. S.D.N.Y. 1997). While the Court does not dispute that those holdings are good law in their respective jurisdictions, the Court is not convinced that Kansas would take a similar approach.

[3] K.S.A. § 77-201 provides in part that "words importing the singular number only may be extended to several persons or things, and words importing the plural number only may be applied to one person or thing."

into sending ineffective notice. The Court finds no reason to restrict the statutory notice provisions to a single owner. Therefore notice of impending lapse to the "the policyowner" required notice to all owners of record.

AIG concedes that it addressed the grace period notice to Edward E. Miller, 2315 N. 99th, Kansas City, Kansas. The notice was not addressed to Richard Miller, who jointly owned the policy. Therefore, as a matter of law, AIG's notice of default was not effective as to Richard Miller and the purported termination of the policy is null and void as to him.[4]

**Edward Miller's Interest**

Defendant argues that the Court should grant it summary judgment as to Edward Miller's interest in the policy. Specifically, defendant argues that the grace period letter which it mailed to Edward Miller was effective notice which permitted the later cancellation of his one-half interest in the policy when premiums due were not paid. Defendant's position is confusing because it does not distinguish Edward Miller's interest as an owner of the policy from Edward Miller's interest as a beneficiary of the policy. Moreover, defendant cites no legal support for its position.

Both policyowners had a statutory right to notice under K.S.A. § 40-411, which pertains to the entire policy. Therefore, embedded in Richard Miller's right to notice of a premium deficiency

---

[4] The policy provides that AIG will "send a written [grace period] notice to you and any assignee on our records at the last known address." See Ex. A to Plaintiffs' Joint Memorandum In Support Of Motion For Partial Summary Judgment Against Defendant American General Life Insurance Company (Doc. #30) filed April 23, 2010. The policy further provides that "'You' and 'Your' mean the owner of the policy at the time an owner's right is exercised." Id. Defendant does not address how this language suggests that it is only responsible for sending notice to only one of two record policyowners.

was his right to make payments to keep the entire policy in effect, not merely a one half interest.[5] Richard Miller's right to keep the entire policy in effect was not limited by his brother's failure to make the payments necessary to keep the policy in force. While plaintiffs' beneficial interest in the policy might be divisible, K.S.A. § 40-411 does not indicate that a policyowner's right to notice is likewise divisible. Holding otherwise would legally impute Edward Miller's actions or inaction to Richard Miller's ownership rights in the policy, creating an agency relationship contrary to established Kansas law.

**IT IS THEREFORE ORDERED** that Plaintiffs' Joint Motion For Partial Summary Judgment (Doc. #29) filed April 23, 2010 be and hereby is **SUSTAINED**.

**IT IS FURTHER ORDERED** that defendant's termination of plaintiffs' life insurance policy is null and void and that plaintiffs are entitled to full death benefits under the policy plus pre-judgment and post-judgment interest, less any premiums that would have otherwise been paid between the date of the cancellation of the policy and Elizabeth Miller's death.

**IT IS FURTHER ORDERED** that Defendant's Cross Motion For Summary Judgment (Doc. #39) filed May 28, 2010 be and hereby is **OVERRULED**.

Plaintiffs' claim for attorneys' fees pursuant to K.S.A. § 40-256 remains.[6]

Dated this 21st day of July, 2010 at Kansas City, Kansas.

---

[5] Nothing in the record suggests that AIG would have allowed Richard Miller to pay a premium to keep half a policy in force for his exclusive benefit.

[6] K.S.A. § 40-256 provides that where a court renders judgment against an insurance company and the company's refusal to pay the full amount under the policy was without just cause or excuse, the court shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action. The parties have not yet addressed whether AIG's refusal to pay the full amount under the policy was without just cause or excuse.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge